IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED

OCT 12 2011

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES OF AMERICA
    Plaintiff,

v.                                                   Civil Action No. 4:10cv109

CHARTIS INSURANCE AGENCY, INC.,
AMERICAN HOME ASSURANCE COMPANY,
and
ARC OF THE VIRGINIA PENINSULA, INC.,
    Defendants.

## OPINION AND ORDER

This matter is before the Court upon Defendants' Chartis Insurance Agency, Inc., American Home Assurance Company, and ARC of the Virginia Peninsula, Inc., (collectively, "Defendants") Motion to Dismiss Amended Complaint filed May 4, 2011. Defendants assert that the United States' Amended Complaint should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated herein, Defendants' Motion to Dismiss is **DENIED**.

### I.    FACTUAL AND PROCEDURAL HISTORY

James E. Thompson retired from the United States Air Force in 1984, and as a benefit of his retirement is entitled to receive medical care provided either by the United States or at the United States' expense.[1] (Pl.'s Compl. ¶3, Pl.'s Resp. to Mot. Dismiss 4.) In 2007, Thompson became employed as a janitor for ARC of the Virginia Peninsula, Inc. His duties included cleaning the Meat Department at the Langley Air Force Base Commissary. (Pl.'s Resp. to Mot.

---

[1] The facts are taken in the light most favorable to Plaintiff.

Dismiss 4.) In the early morning hours of August 26, 2007, Thompson had finished his cleaning duties and was preparing to report to a Commissary supervisor, Joseph "Jerry" Burleson for inspection of his work, when he slipped, fell, and fractured his left arm. (Id. at 4–5.) According to an accident narrative later penned by Burleson, Thompson slipped on a wet spot near the cash registers and appeared to be in "severe pain." (Id. at 5 & Ex. 1) Thompson was taken by ambulance to the nearby Langley Air Force Base Hospital for treatment. Thompson received medical care at the First Medical Group Hospital from August 26, 2007, through August 30, 2007. (Pl.'s Am. Compl. ¶15.)

At the time of the fall, American Home Assurance Company was the contractual insurer of ARC of the Virginia Peninsula, Inc.. The United States alleges that Chartis Insurance Agency succeeded American Home Assurance Company in interest. (See Pl.'s Am. Compl. ¶¶11–12, Defs' Answer ¶¶ 11–12.) On April 10, 2008, Thompson filed a workers' compensation claim with the Virginia Workers' Compensation Commission. (Pl.'s Resp. to Mot. Dismiss 5.) Thompson entered into a settlement agreement on May 7, 2009. (Id.) According to the United States, although Thompson and Defendants were aware of the United States' claim for reimbursement for medical care provided to Thompson, the United States was not made aware of any settlement negotiations. (Id. at 5–6.)

On August 26, 2010, the United States filed a Complaint in this Court, and subsequently amended the same on April 22, 2011, with leave of the Court. The United States' Amended Complaint claims that 10 U.S.C. § 1095 entitles the United States to reimbursement in the amount of $20,354.90 plus interest for medical care furnished to Thompson which is recoverable "from said employer or said employer's workers' compensation insurance carrier." (Pl.'s Am. Compl. ¶¶1, 20.)

Defendants collectively moved to dismiss the Amended Complaint on May 4, 2011, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), claiming that this Court lacks jurisdiction to consider the Amended Complaint and that the Amended Complaint fails to state a claim upon which relief can be granted.

## II. APPLICABLE LAW

Once a court's subject matter jurisdiction is challenged under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). In considering a challenge to its subject matter jurisdiction, a district court may look beyond the pleadings without converting the proceeding to a motion for summary judgment. Id. "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. (citing Trentacosta v. Frontier Pac. Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir. 1987)).

A Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." De Sole v. United States, 947 F.2d 1169, 1177 (4th Cir. 1991); see also Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 325 (4th Cir. 2001). "The threshold to survive a motion to dismiss is a low one." Maersk Line Ltd. v. Care, 271 F. Supp. 2d 818, 823 (E.D. Va. 2003).

Federal Rule of Civil Procedure 8(a)(2) mandates that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This directive has not been interpreted to require "detailed factual allegations." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

(2009). It does require, however, that a plaintiff plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Id. (citing Twombly, 550 U.S. at 555). Additionally, "only a complaint that states a plausible claim for relief" may survive a motion to dismiss. Id. at 1950. A plausible claim for relief must allege the "grounds upon which it rests." Georgia-Pacific, 671 F. Supp. 2d at 790. Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.' " Iqbal, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. ANALYSIS

#### a. *Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)*

Defendants assert as their first ground for dismissal that this Court lacks subject matter jurisdiction to hear the instant claim and therefore the Amended Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). The specific basis for Defendants' jurisdictional challenge, however, is less than clear to the Court. Though Defendants allege that the Court does not have jurisdiction, Defendants' brief does not squarely address this issue. Rather, Defendants' brief immediately proceeds to a discussion of whether workers' compensation liability exists against Defendants (Defs' Br. Supp. Mot. Dismiss 4), then to a discussion of whether the United States' claim is time barred as a matter of Virginia law. (Id. at 10.) As Defendants' support of their first contention is scant at best, the Court struggles to adequately respond to the objection.

Without delving unnecessarily deeply into the Constitutional origins of the federal judicial power, it is without question that a federal district court has original jurisdiction over a

civil action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. It is further beyond contention that where federal jurisdiction is premised on a federal question under 27 U.S.C. § 1331, a federal district court may exercise supplemental jurisdiction over "all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367.

The face of the United States' Amended Complaint plainly alleges entitlement to relief pursuant to federal law, to wit, 10 U.S.C. § 1095. Subsection (e)(1) of § 1095 provides that "the United States may institute and prosecute legal proceedings against a third party-payer to enforce a right of the United States under this section." This Court's subject matter jurisdiction over this matter is thus not seriously in question. "No subject matter jurisdiction difficulties are presented with the United States is the plaintiff in an action in the federal courts unless the government lends its name to a lawsuit merely for the benefit of a private individual." United States v. Power Eng'g Co., 125 F. Supp. 2d 1050, 1056 (D. Colo. 2000) (quoting 14 Charles A. Wright, Arthur R. Miller, Edward R. Cooper, Federal Practice and Procedure § 3651 at 208 (3d ed. 1998)) (internal citations omitted).

Without specifically referring to Fed. R. Civ. P. 12(b)(1), Defendants apparently challenge this Court's jurisdiction to consider the merits of this matter on the ground that, according to Defendants, to do so would "revisit the Virginia Workers' Compensation Commission's final order forever releasing and discharging any such claim of entitlement." (Defs' Br. Supp. Mot. Dismiss 6.) Defendants argue that because Mr. Thompson waived his right to litigate by entering into a settlement, the United States "by extension" cannot "establish retroactively a 'workers' compensation benefit liability' on Defendants." (Id.) However, the sole authority which Defendants cite to support their contention that the Virginia Workers'

Compensation Commission ("VWCC") has exclusive jurisdiction over such claims and that such jurisdiction bars suit by the United States for reimbursement under 10 U.S.C. § 1095 is Code of Virginia § 65.2-201. However, § 65.2-201 merely transfers jurisdiction of workers' compensation claims from the state courts to the VWCC. That statute nowhere provides any indication of why the United States should be deprived of its right to seek reimbursement because of Mr. Thompson's voluntary release of his worker's compensation claims.

The language of 10 U.S.C. § 1095 is clear: "The United States may institute and prosecute legal proceedings against a third party payer to enforce a right of the United States under this section." 10 U.S.C. § 1095(e)(1). Defendants have provided no reason why this Court may not properly exercise subject matter jurisdiction of this case. Therefore, Defendants' Motion to Dismiss Under Rule 12(b)(1) is hereby **DENIED**.

b. ***Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)***

The United States seeks remuneration from Defendants pursuant to 10 U.S.C. § 1095. § 1095 authorizes the United States to seek reimbursement from third-party payers the reasonable cost of health care services rendered to members of the armed forces. United States v. Blue Cross & Blue Shield of Md., Inc., 989 F.2d 718, 727 (4th Cir. 1993) (citing 10 U.S.C. § 1095(a)(1)). Subsection (a)(1) states in full:

> **(a)(1)** In the case of a person who is a covered beneficiary, the United States shall have the right to collect from a third-party payer reasonable charges for health care services incurred by the United States on behalf of such person through a facility of the uniformed services to the extent that the person would be eligible to receive reimbursement or indemnification from the third-party payer if the person were to incur such charges on the person's own behalf. If the insurance, medical service, or health plan of that payer includes a requirement for a deductible or copayment by the beneficiary of the plan, then the amount that the United States may collect from the third-party payer is a reasonable charge for the

> care provided less the appropriate deductible or copayment amount.

"Covered beneficiaries" include "all healthcare beneficiaries under chapter 55 of title 10, United States Code, except members of the Uniformed Services on active duty."

Defendants argue that 10 U.S.C. § 1095 is not applicable to the facts at bar because "no workers' compensation benefit liability against Defendants exists." (Defs' Br. Supp. Mot. Dismiss 4.) According to Defendants, Thompson is not "eligible to receive reimbursement or indemnification" because by settling his claim he "forever released and discharged Defendants from any workers' compensation liability." (Defs' Br. Supp. Mot. Dismiss 5.) Because Thompson was not entitled to reimbursement or indemnification, Defendants claim the United States is not eligible to collect charges for health care services provided to Thompson. (Id. at 4.) As they state, "by the terms of the final settlement order, Mr. Thompson is precluded from readjudicating his entitlement to workers' compensation benefits on account of his alleged injury . . . . The government has no greater right to establish entitlement to workers' compensation benefits than Mr. Thompson." (Id. at 6.)

Defendants' attempts to disclaim workers' compensation liability fail in light of numerous Federal Regulations which clarify that 10 U.S.C. § 1095 applies to workers' compensation programs and that the obligation to pay the United States is not discharged through settlement or other payment to the beneficiary. Section 220.13 explicitly applies the force of 10 U.S.C. 1095 to workers' compensation programs. 32 C.F.R. § 220.13(a) ("[A] workers' compensation program or plan generally has an obligation to pay to the United States the reasonable charges for healthcare services provided in or through any facility of the Uniformed Services to a Uniformed Services beneficiary who is also a beneficiary under a workers'

compensation program . . . ."). Subsection (d) expressly addresses settlement compromises, providing:

> A lump sum compromise settlement, unless otherwise stipulated by an official authorized to take action under 10 U.S.C. 1095 and this part, is deemed to be a workers' compensation payment for the purpose of reimbursement to the facility of the Uniformed Services for services and items provided, even if the settlement agreement stipulates that there is no liability under the workers' compensation law, program, or plan.

32 C.F.R. § 220.0(d). The plain language of 32 C.F.R. § 220.13 provides a mechanism by which the right of the United States to seek reimbursement may be waived or otherwise altered, namely by stipulation by "an official authorized to take action under 10 U.S.C. 1095 and this part." 32 C.F.R. § 220.13(b)(2)(i). To absolve any doubt, § 220.2 plainly states "Payment by a third party payer to the beneficiary does not satisfy 10 U.S.C. 1095."

Moreover, the Supremacy Clause of Article VI of the United States Constitution clearly proscribes Defendants' attempts to hide behind the strictures of state statutory language to escape any obligation under § 1095. Article VI of the Constitution states that the laws of the United States "shall be the supreme Law of the Land . . . anything in the Constitution or Laws of any State to the Contrary, notwithstanding." It follows that state laws that conflict with federal laws are "without effect." Maryland v. Louisiana, 451 U.S. 725, 746 (1981).

The plain language of 10 U.S.C. § 1095 makes clear the United States' right to reimbursement from third-party payers, and regulations promulgated by the Secretary of Defense pursuant to 10 U.S.C. § 1095(f) clarify that the only way that a third-party payer can satisfy § 1095 is to *pay the United States*. 32 C.F.R. § 220.2(c). Congressional intent is the ultimate touchstone in determining the scope and preemptive effect of any federal statute. Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996). The United States maintains that "the cause of action

created by 10 U.S.C. § 1095 is specifically designed to allow the military to obtain reimbursement for medical care given its retirees, dependents, and others, when an insurer would be contractually obligated to pay for that care, if the care was rendered privately." (Pl.'s Resp. to Def.'s Mot. Dismiss at 17.) We agree. To allow a Virginia state law to foreclose the United States' federal claims under § 1095 would clearly frustrate Congress' intent in passing the statute, and violate long-standing constitutional principles.

These findings also apply to Defendants' contention that the United States' claims are time-barred by Virginia Code § 65.2-601, which states, in pertinent part, "The right to compensation under this title shall be forever barred, unless a claim is filed with the Commission within two years after the accident." In this case, however, the United States has not filed a claim for compensation under Virginia Code § 65.2-601. Rather, the United States seeks reimbursement under 10 U.S.C. § 1095. If this were not enough to negate Defendants' claims based on the alleged applicability of a state statute of limitations to the instant case, it is "settled with [ ] definiteness," "that the United States is not bound by state statutes of limitations." Chesapeake & Delaware Canal Co. v. U.S., 250 U.S. 123, 125 (1919); see also United States v. John Hancock Mut. Life. Ins. Co., 364 U.S. 301, 308 (1960) ("[T]he United States is not subject to local statutes of limitations"); United States v. Summerlin, 310 U.S. 414, 417 (1940) ("When the United States becomes entitled to a claim, acting in its governmental capacity and asserts its claim in that right, it cannot be deemed to have abdicated its governmental authority so as to become subject to a state statute putting a time limit upon enforcement"). Based on this stalwart principle, often repeated by the Supreme Court, and on the fact that the United States is not seeking compensation under Virginia Code § 65.2-201, we see no reason to address Defendants' statute of limitations argument any further.

Defendants' final argument in favor of dismissal under Rule 12(b)(6) is that Chartis Insurance Company, formerly AIG Commercial Insurance Agency, Inc., is not a cognizable party to the United States' claims under 10 U.S.C. § 1095. They claim that under Virginia law, the injured employee's employer and workers' compensation insurer, rather than an insurance agency, are liable to pay worker's compensation benefits if a claim is honored. (Def.'s Br. Supp. Mot. Dismiss at 14.) Defendant states that in this case, ARC of Virginia Peninsula, Inc. ("ARC") and American Home Assurance Co. ("American Home") are the employer and insurer, respectively. (Id.)

The United States pleaded in its Amended Complaint, and again so stated in its Response in Opposition to Defendants' Motion to Dismiss, that it *believed* Chartis to be the successor in interest to American Home's assets and liabilities, including liabilities under policies of workers' compensation insurance. The expressed intent of the United States is "to include the insurance company that is now obligated on the policy covering ARC on the date in question, August 26, 2007." (Pl.'s Resp. to Def.'s Mot. Dismiss at 24.) If that is not the case, the United States maintains that it would voluntarily dismiss Chartis. This Court would, of course, accept that outcome.

For the reasons stated herein, Defendants' Motion to Dismiss is hereby **DENIED**. The Clerk is **DIRECTED** to transmit a copy of this Order to the all Counsel of Record.

**IT IS SO ORDERED.**

Newport News, Virginia

Robert G. Doumar
Senior United States District Judge

October 11, 2011